# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | | |
|---|---|---|
| **ELIDA GUEVARA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. V-04-56** |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM & OPINION

Pending before the Court are Plaintiff Elida Guevara's ("Guevara") Motion for Summary Judgment (Dkt. #9) and Defendant, Jo Anne B. Barnhart, the Commissioner of the Social Security Administration's ("Commissioner"), Motion for Summary Judgment (Dkt. #12). After consideration of the motions, the entire record, and the applicable law, the Court is of the opinion that Guevara's motion should be DENIED and the Commissioner's motion should be GRANTED.

### Factual and Procedural Background

Guevara filed this action pursuant to 42 U.S.C. § 405(g) and § 1383(c) for judicial review of an unfavorable decision by the Commissioner regarding her application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act").

Guevara was forty-five years old on the date of her hearing before the Administrative Law Judge ("ALJ") and had an eighth grade education.[1] Guevara filed an application for SSDI and SSI

---

[1] *See* Administrative Transcript ("Tr."), pg. 495.

benefits on April 17, 2000, alleging disability as of April 10, 2000.[2]  On her Disability Report, she alleged disability due to severe pain in her feet, legs, back, neck, and hands.[3]  Prior to the onset date of her alleged disability, Guevara was employed as a housekeeper, a cook at a fast food restaurant, and a cashier at a convenience store.[4]  She also testified that she worked at a factory in the early 1970's sewing clothing.[5]

After her application was denied at the consideration and reconsideration levels, Guevara requested a hearing, which was held in Victoria, Texas, on April 18, 2002, before ALJ Peter F. Belli.  At the hearing, Guevara was represented by counsel.  Guevara testified at the hearing, as did a vocational expert, Bill Brown ("Brown").[6]

When questioned by the ALJ, Guevara testified that she was not currently employed at the time of the hearing,[7] but her husband was employed and that they both had health insurance.[8]  She described the activity involved in each of her past employment positions, as well as the time employed at each job.[9]  Guevara explained that she had to stop working because of pain in her feet,

---

[2] *Id.* at 62, 68, 469.

[3] *Id.* at 68.

[4] *Id.* at 495-96.

[5] *Id.* at 517.

[6] *Id.* at 530.

[7] *See id.* at 495.

[8] *Id.* at 501.

[9] *Id.* at 495-97.

back, knees, hip, and body.[10]

Guevara testified that she was five feet two inches tall and weighed 260 pounds at the time of the hearing.[11]  She also testified that she had a driver's license, but could not drive at the time of the hearing due to a broken foot.[12]  According to her testimony, she is able to cook, do laundry, vacuum the house, smoke cigarettes, and bathe herself.[13]  She is also able to dress herself but requires help buttoning her clothes.[14]  She testified that she has problems with household chores such as cooking and must do her chores slowly.[15]  When describing the difficulties she has performing household chores she testified that she drops things.[16]  She also stated that she dropped things while she worked as a housekeeper at a hospital.[17]  She testified that her medications consisted of Amaryl, Glucophage, Lortab, and Neurontin.[18]  She further testified that she went to church and was able to sit, stand, and kneel, but not without pain.[19]  She described her limitations in bending, standing for no more than 30-45 minutes at a time, and walking a distance of approximately one block before

---

[10] *Id.* at 497.

[11] *Id.* at 501, 525.

[12] *Id.* at 504-09.

[13] *Id.* 502-03.

[14] *Id.* at 502.

[15] *Id.* at 519.

[16] *Id.* at 519-20.

[17] *Id.* at 520.

[18] *Id.* at 507.

[19] *Id.* at 508, 528.

having to rest.[20]  Guevara further testified that she went grocery shopping with her daughter or granddaughter but never alone and she always had to use the cart for support.[21]

Following Guevara's testimony, Brown, the vocational expert, testified as to Guevara's past relevant work and potential for future employment.  Regarding Guevara's past work experience, Brown characterized her position as a housekeeper as medium unskilled work.[22]  Brown characterized Guevara's positions as a fast food worker, sewing machine operator, and cashier as light unskilled work.[23]

After the completion of the hearing, the ALJ issued his decision denying benefits on May 28, 2002.  The Appeals Council subsequently declined to review the ALJ's decision on January 15, 2004.[24]  The ALJ's decision thus became the Social Security Administration's final decision. Guevara  then brought this timely action for review of the Commissioner's final decision.

### Standard of Review and Applicable Law

The Court's review of the Commissioner's final decision to deny disability benefits is limited to two issues: (1) whether substantial record evidence supports the decision and (2) whether proper legal standards were used to evaluate the evidence.  *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *McQueen v. Apfel*, 168 F.3d 152, 157 n. 2 (5th Cir.

---

[20] *See id.* at 525-28.

[21] *Id.* 528-29.

[22] *Id.* at 531.

[23] *Id.* at 532.

[24] *Id.* at 9-10.

1999)).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive and this Court must affirm. The widely accepted definition of "substantial evidence" is more than a mere scintilla, but less than a preponderance. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Carey*, 230 F.3d at 135. In applying this standard, the court is to review the entire record, but it may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. *Brown*, 192 F.3d at 496. Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

To claim entitlement to disability benefits, a claimant must show that she was disabled on or before the last day of her insured status. *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979). The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that the Commissioner should evaluate disability claims according to the following sequential five-step process:

    (1)    a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

    (2)    a claimant will not be found to be disabled unless he has a "severe

impairment;"

(3)     a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors;

(4)     a claimant who is capable of performing work he has done in the past must be found "not disabled;" and

(5)     if the claimant is unable to perform his previous work as a result of his impairment, then factors such as age, education, past work experience, and residual functioning capacity must be considered to determine whether he can do other work.

20 C.F.R. § 404.1520(b)-(f); *see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving that she is unable to engage in substantial gainful activity within the meaning of the Act. *See Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991) (citing *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)). The claimant must show that she suffers from a mental or physical impairment that not only renders her unable to perform her previous work, but, given her age, education, and work experience, prevents her from engaging in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980) (quoting *Rhynes v. Califano*, 586 F.2d 388, 389-90 (5th Cir. 1978)). However, if the claimant can show that she can no longer perform her previous job, the burden then shifts to the Commissioner to show that there exists some other form of substantial gainful employment that the claimant can perform. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980); *Johnson*, 612 F.2d at 997. By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing it on the fifth.

6

*See Brown*, 192 F.3d at 498; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)).  The analysis stops at any point in the five step process upon a finding that the claimant is or is not disabled.  *See Greenspan*, 38 F.3d at 236.

## Discussion

In this case, Guevara requests judicial review of the ALJ's decision to deny disability benefits.  Guevara argues that the Commissioner's decision was not based on substantial evidence. In the unfavorable decision, the ALJ determined that Guevara met the nondisability requirements for a period of disability and disability insurance benefits.[25]  He then followed the five step process outlined in the regulations.  At the first step, he found that Guevara had not engaged in substantial gainful activity since the alleged onset of her disability, April 10, 2000.[26]  At step two, the ALJ determined that Guevara had an impairment or a combination of impairments that constituted severe medically determinable impairment[s].[27]  At the third step, the ALJ determined that Guevara's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1.[28]  At step four, the ALJ determined that Guevara is unable to perform any of her past relevant work.[29]  Proceeding to the final step of the analysis, the ALJ found that, based upon her age, educational background, work experience, and residual functional capacity ("RFC"), Guevara was still capable of performing a significant range of light work where she would

---

[25] *Id.* at 23.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

only occasionally work overhead with her right arm or flex and extend her right wrist; where she would not have to climb ropes, ladders or scaffolds; and where she would only occasionally stoop, kneel, crouch, or crawl.[30]  The ALJ also found that Guevara had a slight limitation in understanding, remembering, and carrying out short, simple job instructions and in making judgments on simple work-related decisions.[31]  He also found that Guevara had a moderate limitation in interacting with the public, supervisors, and coworkers, and in responding appropriately to work pressures and to changes in a routine work setting.[32] The ALJ further found that Guevara had a marked limitation in understanding, remembering, and carrying out detailed work instructions.[33]

In support of her assertion that the ALJ's determination is not supported by substantial evidence, Guevara presents two arguments:

(1)     The Commissioner erred in failing to discuss her diagnosis of fibromyalgia and obesity and its effects on her ability to work and in ignoring the opinions of her treating physicians as well as the opinion of the consultative physician; and

(2)     The Commissioner erred in according controlling weight to the opinion of the non-examining reviewing physician and in according little or no weight to the opinions of the treating physicians.

The Court notes that both arguments address the weight accorded to Guevara's treating physicians. To avoid undue repetition the Court will address these arguments in its discussion of (2) above.  The Court also notes that Guevara presents a number of other miscellaneous arguments in her briefing under both argument headings.  The Court will address all of Guevara's arguments in turn.

---

[30] *Id.*

[31] *Id.* at 24.

[32] *Id.*

[33] *Id.*

I.      **Guevara's First Argument**

A.      **Fibromyalgia and Obesity**

The record before the Court reveals that Guevara has suffered from osteoarthritis, diabetes, carpal tunnel syndrome, obesity, temporomandibular joint, fibromyalgia, acid reflux, and pain to ankles, feet, legs, knees, wrist, hand, arms, shoulders, hips, neck, back, and body in general as well as psychological ailments.  The records also reveal that from May 1997 to September 2002, Guevara saw many doctors including her family physician, neurologists, orthopedic surgeons, pain management specialists, a diabetes specialist, a podiatrist, a psychologist, a rheumatologist, and a physical medicine and rehabilitation specialist.

The ALJ must properly consider plaintiff's combined impairments.  An individual's combined impairments can prohibit substantial gainful activity.  20 C.F.R. §§ 404.1523, 416.923; *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir.1985).  It is well settled that "the Commissioner must analyze both the disabling effect of each of the claimant's ailments and the combined effect of all of these impairments."  *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir.1987) (quotations omitted).  However, an ALJ's finding that multiple impairments do not render a plaintiff disabled will be upheld unless the Commissioner "so fragmentized [plaintiff's] several ailments" that he failed properly to evaluate their combined effect upon the plaintiff.  *Owens*, 770 F.2d at 1282.

Guevara argues that the ALJ erred because the combined effect of her obesity coupled with her osteoarthritis affecting the weight-bearing joints and her fibromyalgia symptoms limited her ability to work.  In support of this argument, Guevara asserts that the ALJ erred in failing to discuss Guevara's fibromyalgia and obesity.  This assertion, however, overlooks the fact that the ALJ

recognized that Guevara suffered from obesity and was diagnosed with fibromyalgia.[34]

Regarding Guevara's fibromyalgia, the ALJ stated that "[f]ibromyalgia indicates simple muscle pain characterized by pain, tenderness and stiffness in joints, muscles, joint capsules and adjacent structures.  Pain is aggravated by movement, tenderness may be present and sometimes localized in small trigger zones or nodules."[35]  The ALJ noted, however, that there was no evidence of the presence of multiple trigger points found on physical examination.[36]  The Commissioner admits that this statement was made in error.[37]  Based upon the record and the Commissioner's admission, the Court agrees that this determination was erroneous.[38]  Nonetheless, the decision of the Commissioner will not be reversed and remanded for lack of substantial evidence unless the claimant shows she was prejudiced by the deficiencies she alleges.  *Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000) (citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996)).  The ALJ did not deny Guevara's claim because she did not have fibromyalgia, but because she could still perform light work despite her complaints.[39]  *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (noting that most people with fibromyalgia are not disabled.).  Thus, Guevara has not been prejudiced because the ALJ found she had an RFC to perform light work despite the fact that she had been diagnosed with fibromyalgia.

---

[34] *Id.* at 19, 20.

[35] *Id.* at 20.

[36] *Id.*

[37] Commissioner's Brief in Reply to Plaintiff's Brief and in Support of Defendant's Motion for Summary Judgment, pg. 1.

[38] *See* Tr. at 231, 408, 427, 430, 442.

[39] *See id.* at 23-4.

The ALJ did not deny that Guevara suffered from musculoskeletal impairments that would cause her some pain and limitations.[40]  He concluded, however, Guevara could still perform work of light exertion despite her pain.[41]  The inability to work without incurring some pain is not an automatic ground for disability.  *Fortenberry*, 612 F.2d at 950.  The "determination whether an applicant is able to work despite some pain is within the province of the administrative agency and should be upheld if supported by substantial evidence."  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).  As alluded to above, the ALJ did not ignore Guevara's subjective complaints of pain.  Rather, he felt that there was conflicting medical testimony that discredited her subjective testimony.  *See also Gresham v. Califano*, 510 F. Supp. 1151, 1156 (S.D. Tex. 1981).  For instance, the ALJ noted that her psychologist, Dr. Sean G. Connolly, found that, although there was no evidence of significant exaggeration, Guevara's clinical profile was "questionable for interpretation."[42]  The ALJ also noted that Dr. Connolly found Guevara to have a mild to moderate tendency toward over-emphasizing her symptoms and "faking sick" and that this "raised questions about the overall accuracy of the clinical profile."[43]  The ALJ also considered the opinion of the State agency medical and psychological consultants who, based on the evidence in the record, did not find Guevara to be disabled.[44]  The ALJ was entitled to give greater weight to this discrediting evidence.  *See Gresham*, 510 F. Supp. at 1156.

---

[40] *See id.* at 18-24.

[41] *See id.* at 23-4.

[42] *See id.* at 20, 188.

[43] *Id.*

[44] *Id.* at 22.

**B.      Relevant Social Security Rulings**

Guevara places particular weight upon the ALJ's alleged failure to apply SSR 00-3p, and the superceding SSR 02-01p.  Social Security Ruling 02-01p provides that obesity will be considered a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it *significantly limits an individual's physical or mental ability to do basic work activities*.  Published Social Security Rulings are binding on all components of the Social Security Administration, but they do not have the force and effect of the law or regulations.  *See Heckler v. Edwards*, 465 U.S. 870, 874 n. 3, 104 S. Ct. 1532, 1535  n. 3 (1984).  They are simply to be relied upon as persuasive authority and they may be superceded, modified, or revoked by later legislation regulations, court decisions, or rulings.  *Id.*  Nonetheless, even if the ALJ failed to apply SSR 02-01p, the error was harmless because he clearly found Guevara was still able to do light work despite her impairments.[45]  In other words, SSR 02-01p would not have entitled Guevara to benefits even if the ALJ had applied it to the facts of this case.

**C.      Guevara's Ability to Stand and Walk During the Course of a Work Day**

Under the heading of her first argument, Guevara also argues that the medical evidence as a whole does not support the ALJ's finding that she can perform the six hours of standing or walking required of light work.  Guevara testified that she could only stand for 30-45 minutes at a time and could only walk a distance of approximately one block before having to rest.[46]  Guevara also reports that she has "severe" pain to her feet, legs, and knees.  The objective medical evidence, however, contradicts Guevara's testimony.  In August 2000, an X-ray revealed that Guevara had early

---

[45] *See id.* at 23-4.

[46] *See id.* at 525-28.

degenerative arthritis of the left knee.[47]  In October 2001, Guevara was examined by Zeba Gill, M.D. with multiple complaints, including bilateral knee pain, right hip pain, and pain in both feet.[48] However, upon examination, she had no effusion of the knees and had a good range of motion with only mild crepitus.[49]  Similarly, there was no swelling or inflammation of the feet and muscle testing revealed no weakness.[50]  Again in November of 2001, Guevara saw Scott Stein, D.O., complaining of pain, marked swelling, stiffness and the inability to do what she wants for at least four or five years.[51]  Despite these complaints, the medical records did not indicate that there was swelling upon examination.[52]  He diagnosed her with fibromyalgia and generalized osteoarthritis, as well as diabetes, obesity, sleep disturbance, possible jaw problems, and carpal tunnel syndrome.[53]  In February 2002, Guevara told Dr. Stein that she was doing "so so" but that her medicine had "helped a lot."[54]

Though Guevara suffered from plantar fasciitis and underwent surgery for that condition on January 31, 2000, the evidence indicates that her foot felt better after the surgery and was continuing

---

[47] *Id.* at  232.

[48] *Id.* at 454.

[49] *Id.*

[50] *Id.*

[51] *Id.* at 440.

[52]  *Id.*

[53] *Id.* at 442.

[54] *Id.* at 452.

13

to improve.[55]  In fact, her podiatrist, Dr. Richard Steinberg, noted on March 31, 2000, that Guevara had minimal discomfort upon palpation of her foot and that there was no sign of infection, no swelling, erythema, or warmth in the right heel.[56]  Her podiatrist noted that, though she had a very mild limp, she would be able to return to work without much discomfort.[57]  On March 27, 2003, Guevara again saw Dr. Steinberg complaining of pain in both heels.[58]  He noted pain upon palpitation of the right and left heels, but noted no swelling or discoloration present on either foot.[59] Dr. Steinberg also anticipated that the pain in the right heel would be totally eliminated within the next few weeks.[60]  Despite this prognosis, Guevara again saw Dr. Steinberg on April 10, 2000.[61]  On that date, Dr. Steinberg noted some swelling and erythema in the area but no sign of infection.[62]  He did, however, give Guevara a note to be off from work for two to four weeks until she was able to function despite pain.  Though the evidence just discussed indicates that Guevara suffered from pain, had some swelling, and received a doctor's note excusing her from work, based upon the improvement just discussed, there was substantial evidence that Guevara's condition was improving and that she could in fact work.  Moreover, as stated above, there was evidence that Guevara had

---

[55] *Id.* at 251, 253, 254.

[56] *Id.* at 250.

[57] *Id.*

[58] *Id.* at 249.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*

a mild to moderate tendency toward over-emphasizing her symptoms and "faking sick" which raised

questions regarding the accuracy of her clinical profile.[63]   The ALJ was entitled to give weight to

this discrediting evidence.   *See Gresham*, 510 F. Supp. at 1156.

Guevara also stated that she had a broken foot at the time of the hearing, but there is no

indication that her condition rendered her unable to "to engage in any substantial gainful activity."

42 U.S.C. § 423(d)(1)(A).   Finally, in his decision the ALJ noted that Guevara was not using a cane,

walker, crutches, or a back brace to aid in walking.[64]

Moreover, the ALJ also relied on the testimony of the vocational expert who found that a

hypothetical person with Guevara's age, education, and past relevant work history, could perform

a number of jobs if limited to light work with the restrictions posed by the medical expert.[65]   The

ALJ asked the vocational expert the following question:

> Well, take a hypothetical individual, similar to the claimant, who's 45 years of age,
> has an eighth-grade education, is literate in English.  Work history as in the record.
> Is able to lift, carry, push and/or pull occasionally 20 pounds, frequently, 10 pounds.
> This individual can sit six hours out of an eight-hour day with normal breaks.  Can
> stand and walk six hours out of an eight-hour work day with normal breaks.  Is
> limited to occasional flexion and extension of the right hand and wrist.  Limited to
> occasional stooping, kneeling, crouching, and crawling.  No climbing of ladders,
> ropes or scaffolds.  Whose ability to understand–receive, understand, remember and
> carry out short, simple instructions is mildly impaired, but can generally function
> well in this area.  The ability to receive, understand and remember detailed–and carry
> out detailed  instructions is moderately limited but can–is still able to function
> satisfactorily in this area.  The ability to receive, carry–to receive, understand,
> remember and carry out complex job instruction is markedly limited, which–is
> severely limited, rather, but is not precluded.  The ability to make judgments and a
> simple, work-related decision is mildly limited, but can generally function well in
> this area.  The ability to interact appropriately with the public, supervisors and

---

[63] *Id.*

[64] *Id.* at 21.

[65] *Id.* at 22, 18.

coworkers is moderately limited, but the individual still was able to function satisfactorily in this area.  And this is true, also, with responding to work pressures and changes in routine work settings.  Are there–can this individual perform any of the past work in your opinion, that the claimant has performed?[66]

In addition the ALJ asked the vocational expert to consider that Guevara's right wrist is limited to occasional flexion and extension.[67]  Based upon the ALJ's question, the vocational expert indicated that Guevara could not perform her past relevant work, but could still perform jobs in the national economy such as a casual amusement and recreation worker.[68]  Such jobs include, usher, lobby attendant, greeter, identification clerk/verification clerk, and ticket taker.[69]

Guevara's attorney was also given the opportunity to ask the vocational expert a hypothetical question:

If the individual–taking the hypothetical, but with the limitation that the person could not stand more than 30 to 45 minutes at the time–at a time, would that individual be able to do those kinds of work?[70]

The vocational expert answered that the person could probably not work as an usher, but could probably be a ticket taker, and might be able to be a lobby attendant.[71]  The vocational expert also stated that this would place pressure on the hypothetical person's ability to perform the job of greeter or identification/verification clerk, but it would not eliminate the jobs.[72]

----

[66] *Id.* at 533-34.

[67] *Id.* at 534.

[68] *Id.* at 534-35.

[69] *Id.* at 535-36, 537.

[70] *Id.* at 538.

[71] *Id.*

[72] *Id.* at 542.

16

Finally, Guevara has alleged essentially the same type of pain that she currently alleges since 1997.  Guevara was able to work despite this history until April 2000 as a housekeeper; a job that was even more strenuous than the jobs the ALJ found Guevara capable of performing.

## II.    Guevara's Second Argument

### A.    Guevara's Assertion That The ALJ Did Not Accord Sufficient Weight to Her Treating Physicians

Guevara asserts that the ALJ gave controlling weight to non-examining physicians and accorded little or no weight to her treating physicians.  To Guevara's credit, the regulations do state that, normally, a treating physician's opinion regarding the nature and severity of a patient's impairment will be given controlling weight.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (internal quotations omitted).  But this is so only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence.  *Id.* (citing *See Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The regulations also state that an evaluation by the claimant's treating physician should be accorded great weight.  *Martinez*, 64 F.3d at 176 (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994), *cert. denied*, 514 U.S. 1120, 115 S. Ct. 1984 (U.S. 1995)).  The ALJ ultimately may give less weight to the medical opinion of a treating physician when his statements are conclusory, unsupported, or otherwise incredible.  *See Greenspan*, 38 F.3d at 237.  Even though the treating physician's medical opinion diagnosis should be afforded considerable weight, the "'the ALJ has sole responsibility for determining a claimant's disability status.'"  *Martinez*, 64 F.3d at 176 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990)).

Guevara asserts that:

There is no substantial evidence in the record to controvert the opinions of the

treating physicians, Dr. Scott Stein, Dr. Linda Wilson, Dr. Luci Nguyen, Dr. Richard Sawyers, Dr. Janice Lorenzen, Endo [sic], Dr Jerry L. Followwill, and Dr. Wesly [sic] D. Dennis as well as Mrs. Guevara's family physician Dr. Eugene Hernandez.

The Court notes that upon reviewing his decision, it is clear that the ALJ did consider evidence from a number of Guevara's treating physicians.  For instance, his decision refers to findings of Dr. Sawyers, Dr. Wilson, Dr. Richard Steinberg, Dr. Dennis, Dr. Fred Merian, and Dr. Luci Nguyen.[73] After examining the conclusions of these doctors, the ALJ found evidence contradicting Guevara's assertion of disability.

Of the doctors referred to by Guevara above, the ALJ's decision did not discuss the opinions, findings, or assessments, of Dr. Stein, Dr. Lorenzen, Dr. Followwill, or Dr. Hernandez.  Although the ALJ's decision did not expressly refer to the opinions of these doctors, his determination is still supported by substantial evidence.

Guevara saw Dr. Stein November 27, 2001.[74]  As discussed above, Dr. Stein determined that Guevara had fibromyalgia and generalized osteoarthritis, as well as diabetes, obesity, sleep disturbance, possible jaw problems, and carpal tunnel syndrome.[75]  The record suggests that Guevara experienced some improvement.  In February 2002, she told Dr. Stein that she was doing "so so" but that her medicine had "helped a lot."[76]  Additionally, the ALJ referred to Guevara's fibromyalgia and generalized osteoarthritis, obesity, sleep disturbance, and carpal tunnel syndrome.[77]  Though the

---

[73] *Id.* at 19-20.

[74] *Id.* at 442.

[75] *Id.* at 442.

[76] *Id.* at 452.

[77] *Id.* at 442.

18

ALJ's decision did not mention Guevara's jaw problems or her diabetes, there was substantial evidence in the record to indicate that all the problems recognized by Dr. Stein did not render Guevara unable to perform light work.

Guevara saw Dr. Lorenzen on March 12, 1999, who diagnosed her with diabetes and peripheral neuropathy at that time.[78]  Dr. Lorenzen noted that she had "tenderness to palpation of her back" and "1+ pedal edema."[79]  However, Dr. Lorenzen also noted that the remainder of her exam was "unremarkable."[80]  She also noted that Guevara's basic chemistries were unremarkable.[81]

Guevara's reliance upon the opinions of Dr. Followwill is misguided.  Guevara refers the Court to Exhibit R-143.  First, Exhibit R-143 is an assessment form Dr. Richard G. Stoval, not Dr. Followwill.  Second, Guevara's reliance upon Dr. Followwill is based upon an alleged visit on September 5, 2002.  The ALJ decision issued on May 28, 2002 was undergone without the benefit of any evidence from Dr. Followwill.  To the extent that Guevara intended to amend the record by adding a second Exhibit R-143, that exhibit would have to be considered new evidence.  In order to warrant a remand, the offered evidence needs to be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence at the prior proceeding.  42 U.S.C. § 405(g); *see also Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987).  In addition, the evidence may not concern evidence of a later-acquired disability or subsequent deterioration of a previously non-disabling condition.  809 F.2d at 1058.  The Court notes Guevara has not demonstrated either that

---

[78] *Id.* at 163.

[79] *Id.* at 164.

[80] *Id.*

[81] *Id.*

the new evidence from Dr. Followwill is material or that there was good cause for failing to incorporate the evidence at the initial proceeding. In fact, it appears that Guevara has failed to submit any new evidence whatsoever from Dr. Followwill. Therefore, her reliance upon Dr. Followwill's alleged opinions is unfounded.

Lastly, the record shows that Guevara was under the treatment of her family physician, Dr. Hernandez, for many years. Guevara reports that Dr. Hernandez treated her for hypertension; diabetes control; chronic pain all over her body, including her back, neck, feet, heels, knees, joints, arm, right shoulder; severe headaches; abdominal pain; and gastroesophageal reflux. Again, Commissioner's decision will not be reversed and remanded for lack of substantial evidence unless the claimant shows she was prejudiced by the deficiencies she alleges. *Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000) (citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996)). Guevara presents no evidence or argument that any of these conditions rendered her unable to perform the light work outlined by the vocational expert.

Guevara also argues that the ALJ failed to explain his reasons for rejecting the favorable evidence from her treating physicians. Social Security Ruling 96-2p mandates that, when deciding to discount the opinion of a treating physician, the ALJ must indicate the specific reasons for discounting the treating source's medical opinion. *See* Social Security Ruling 96-2p (1996), 1996 WL 374188, at *5 (S.S.A. July 2, 1996). In presenting her argument, Guevara cites *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). In *Newton*, the Fifth Circuit held that an ALJ is required to consider each of the factors set forth in 20 C.F.R. § 404.1527(d). However, the Fifth Circuit explained that its ruling was to be confined to limited circumstances. *See Alejandro v. Barnhart*, 291 F. Supp.2d 497, 509 (S.D. Tex. 2003). The Fifth Circuit held that this analysis must be performed "absent

20

reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist." *Newton*, 209 F.3d at 453.  The *Newton* court also noted that "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *Id.* at 458.  The Fifth Circuit also noted that it was not confronted with a case in which "the ALJ weigh[ed] the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion. "*Id.*  As the Fifth Circuit elaborated, *Newton* was, "[i]nstead . . . a case where the ALJ summarily rejected the opinions of [the claimant's] treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant." *Id.*

*Newton*'s holding does not apply to the facts of the instant case, because this is not a situation where the ALJ rejected an opinion of a treating physician based solely upon a non-specialist, non-examining physician.  In this case the medical record contained competing evidence from Dr. Gill, Dr. Stein, and Dr. Steinberg, all of whom were treating physicians.  Therefore, the ALJ did not err by not specifically addressing all of the factors set forth in 20 C.F.R. § 404.1527(d).

### B.    Miscellaneous Arguments

Guevara also makes a variety of other arguments that are not clearly connected to her assertion regarding the weight accorded to the opinions of her treating physicians.  For instance, Guevara asserts that the ALJ's reliance on her RFC Assessment, signed by Dr. M. Dolan, was misguided because the exertional limitations in the report are inconsistent with the findings the ALJ relied upon in his hypothetical question to the vocational expert.  The exertional limitations listed in the RFC Assessment are lifting/carrying 50 pounds occasionally and 25 pounds frequently,

stand/walk and sit six hours in an eight hour work day, and otherwise push/pull unlimited.  In his

hypothetical question to the vocational expert, the ALJ asked about a person who is

> able to lift, carry, push and/or pull occasionally 20 pounds, frequently, 10 pounds.
> This individual can sit six hours out of an eight-hour day with normal breaks.  Can
> stand and walk six hours out of an eight-hour work day with normal breaks.

It is apparent that the ALJ's hypothetical question to the vocational expert is inconsistent with the

exertional limitations listed in the RFC Assessment.  Nonetheless, Guevara was not prejudiced by

the inconsistency because the ALJ's question presented a hypothetical individual who was even

more restricted in her physical abilities than Guevara was determined to be by Dr. Dolan.

Guevara also states in conclusory fashion that the state reviewing agency did not have the

entire medical record available to it at the time of its review.  Guevara's motion explains that the

"[e]vidence showed she did not shop alone, with that Dr. Connolly determined she did have a

cognition impairment."  This argument is unclear.  The Court notes, however, that Dr. Connolly's

report does not indicate that he found Guevara to suffer a cognitive impairment merely because of

her shopping habits.

Finally, Guevara refers to various mistakes made by the ALJ.  The Court has already noted

that the ALJ erroneously determined that there was no evidence of the presence of multiple trigger

points found on physical examination.  Guevara also argues that the ALJ erred in stating that he

found the testimony of the medical expert to be credible because the medical expert did not testify

at hearing.  The ALJ's statement was not made in error.  The medical expert filed a report which

may properly be described as testimony.[82]

In addition Guevara questions the following language from the ALJ's decision:

---

[82] *See id.* at 195-202.

> There are no X-rays, MRI's, CT scans, myelography or electromyography indication of crushed, herniated, or dislocated discs. . . . She has not been to physical therapy, work hardening, or a pain clinic and is not performing any strengthening exercises at home.  She is not using a tens unit which is the standard device used to relieve pain.[83]

Guevara argues that this statement is completely contradicted by the record.  The Court agrees that some of these findings are completely contradicted by the evidence in the record which contains physical therapy from 1994-2001, home strengthening exercises, pain management, and the use of a TENS unit.[84]  However, though the administrative record also contains records of MRI's and X-rays, the evidence to which Guevara directs the Court do not contain any records of MRI's of "crushed, herniated, or dislocated discs."  Moreover, Guevara has not alleged nor does the Court find that she was prejudiced by the ALJ's error.  *Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000) (citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996)).  The fact that Guevara underwent MRI's, engaged in physical therapy and home strengthening exercises, and also underwent pain management and used a TENS unit does not change the fact that there was substantial evidence to support the ALJ's conclusion that she was still capable of performing a significant range of light work.  Accordingly, the Court does not deem it proper to reverse the ALJ's decision or remand the case on this basis.

In sum, the findings relied upon by the ALJ constitute more than a mere scintilla of evidence to support his finding that Guevara's impairments were not disabling as defined under 20 C.F.R. § 404.1520(f) and 416.920(f).  Thus, the Court must uphold the ALJ's conclusion that Guevara's impairments were not sufficient to prevent substantial gainful employment.

---

[83] *Id.* at 21.

[84] *See id.* at 135, 290-92, 326-62, 362-78, 393, 394-96, 465-68.

**CONCLUSION**

For the foregoing reasons, Guevara's Motion for Summary Judgment (Dkt. #9) is DENIED and the Commissioner's Motion for Summary Judgment (Dkt. #12) is GRANTED.  The Court shall enter a final judgment on even date herewith.

**SIGNED** on this 18th day of August, 2006.


JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE